UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CLARENCE MILLER,

                         Petitioner,

         v.                                                    No. 9:16-CV-512
                                                               (TJM/CFH)
PAUL D. CHAPPLUS, JR.,

                         Respondent.

**APPEARANCES:**                          **OF COUNSEL:**

Clarence Miller
04-B-3274
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14092
Petitioner pro se

Hon. Eric T. Schneiderman                 MICHELLE ELAINE MAEROV, ESQ.
Attorney General for the                  Assistant Attorney General
State of New York
New York Office
120 Broadway
New York, New York 10271
Attorneys for Respondent

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Presently pending before the Court is a petition for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by petitioner pro se Clarence Miller ("petitioner"), an inmate

in the custody of the New York State Department of Corrections and Community Supervision

---

        [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

("DOCCS"). Dkt. No. 1 ("Pet."). On November 30, 2004, after a jury trial in Onondaga County Court, petitioner was convicted of Kidnaping in the Second Degree (N.Y. Penal Law § 135.20),[2] Criminal Use of a Firearm in the First Degree (N.Y. Penal Law § 265.09 (1)(a),[3] Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03 (2)),[4] Assault in the Second Degree (N.Y. Penal Law § 120.05 (2),[5] Assault in the Third Degree (N.Y. Penal Law § 120.00(1) )[6] and Reckless Endangerment in the Second Degree (N.Y. Penal Law §120.20).[7] On May 4, 2016, petitioner filed a pro se petition seeking a writ of habeas corpus on the grounds that (1) his trial counsel was ineffective; (2) the trial court erred in admitting his police booking video in petitioner's absence; (3) the trial court erred in admitting evidence of an excited utterance; and (4) legal insufficiency. See Pet. at 5-10. Respondent opposes the petition. Dkt. No. 10. Petitioner filed a traverse requesting that the Court conduct an evidentiary hearing. Dkt. No. 19. For the reasons that follow, the Court recommends that the petition be denied.

---

[2] Under N.Y. Penal Law §135.20, "[a] person is guilty of kidnaping in the second degree when he abducts another person."

[3] Under N.Y. Penal Law § 265.09(1)(a), "[a] person is guilty of criminal use of a firearm in the first-degree when he commits any Class B violent felony . . . and he (a) possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged."

[4] Under N.Y. Penal Law § 265.03 (2) "[a] person is guilty of criminal possession of a weapon in the second degree when he possesses a loaded firearm."

[5] Under N.Y. Penal Law § 120.05(2), "[a] person is guilty of assault in the second degree when with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

[6] Under N.Y. Penal Law § 120.00(1), "[a] person is guilty of assault in the third degree when with intent to cause physical injury to another person ,he causes such injury to such person or to a third person ."

[7] Under the N.Y. Penal Law § 120.20, "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of physical injury to another person."

# I. Background

## A. Procedural History

Petitioner was indicted by an Onondaga County grand jury on one count of Kidnapping in the Second Degree (N.Y. Penal Law §135.20), one count of Criminal Use of a Firearm in the First Degree (N.Y. Penal Law § 265.09 (1) (a), one count of Criminal Possession of a Weapon in the Second Degree(N.Y. Penal Law § 265.03 (2)),one count of Assault in the Second Degree (N.Y. Penal Law § 120.05 (a)),one count of Assault in the Third Degree (N.Y. Penal Law § 120.00(1), and one count of Reckless Endangerment in the Second Degree (N.Y. Penal Law § 120.20). On July 26, 2004, petitioner was arraigned on the indictment in Onondaga County Court. Arraignment Tr. at 2.[8] Petitioner entered a plea of not guilty to the indictment. Id. On November 8, 2004, a jury trial commenced before the Hon. William D. Walsh, Onondaga County Court Judge. Id. at 5.

The following facts were adduced at trial. On May 31, 2004, petitioner called Cindy Mateo who he had recently begun dating. Trial Tr. at pp 447-50. Petitioner asked Ms. Mateo if they could get together that evening. Id. at 452. When Ms. Mateo declined, petitioner hung up the telephone. Id. Petitioner called back moments later, and asked Ms. Mateo to return a cellular phone that he had given her as a gift. Id. Ms. Mateo agreed to return the phone. Id. at 453.

Ms. Mateo drove to petitioner's residence in Syracuse. Trial Tr. at 454. When Ms.

---

[8] The transcripts for proceedings held on the following dates are contained at Dkt. Entry11-1: July 26, 2004 ("Arraignment Tr."); Aug. 18, 2004 ("Conference Tr."); Sept. 8, 2004 ("Discovery Conference Tr."); Sept. 29, 2004 ("Suppression Hearing Tr.") and Nov. 8, 2004 ("Trial Tr."). The Trial Transcript for Nov. 9, 2004 is contained at Dkt. Entry 11-2. The Trial Transcript for Nov. 10, 2004 is contained at Dkt. Entry 11-3 and Dkt. Entry11-4. ("Trial Tr."). Dkt. Entry 11-4 also contains the transcript for the sentencing hearing on Nov. 30, 2004 ("Sentencing Tr.").

Mateo pulled into the driveway, petitioner's uncle, Norman Miller, informed her that petitioner was inside. Id. at 456. Petitioner came out of the residence and asked Ms. Mateo to return to her vehicle; she complied. Id. at pp 454-56,560-63. Petitioner got in the vehicle with her. Id. at 456. Petitioner instructed Ms. Mateo to back out of the driveway. Id. When she asked why, petitioner brandished a gun and told her if she did not obey she would "get slayed right here." Id. at 457. Ms. Mateo refused to back out of the driveway, and petitioner struck her in the forehead with the gun. Id.

Ms. Mateo backed her vehicle out of the driveway and began to drive as directed by petitioner. Trial Tr. at 458. As Ms. Mateo was driving, petitioner repeatedly struck her with the gun and told her he was going to kill her. Id. He also took bullets out of his pocket and loaded the gun. Id. at 458-59. Petitioner instructed Ms. Mateo to drive to West Onondaga Park. Id. at 458. Once they arrived at the park, petitioner told Ms. Mateo to stop the car. Id. at 461. When she attempted to exit the vehicle, petitioner struck her face. Id. at 461-62. At gun point, petitioner ordered Mateo to switch seats with him. Id. at 462.

Petitioner drove Ms. Mateo to Onondaga Community College as he was "looking for a place" where he could "shoot [her] and no [one] would hear." Trial Tr. at 464. When they arrived at Onondaga Community College, the parking lot was full of police cars, and petitioner continued to drive around Syracuse. Id. at 464-65. As Petitioner was driving, he continued to strike Ms. Mateo. Id. at 467. Petitioner drove to Kirk Park. Id. At Kirk Park, petitioner exited the vehicle and instructed Ms. Mateo to look at him. Id. at 469. Petitioner tore the earring out of one of her ears, stating: "you're not going to need these where you are going." Id. at 469. Petitioner first shot the gun away from the car, before firing at Ms. Mateo, narrowly missing her. Id. Petitioner returned to the vehicle, struck Mateo, and started

4

driving. Id.

Petitioner left Kirk Park and drove to his residence. Trial Tr. at 473. When they arrived at his residence, petitioner went in the house to store the gun. Id. at 474. Petitioner returned to the car and sat in the driver's seat. Id. Petitioner resumed screaming at and striking Mateo. Id. at 477. He also called a number of people and told them they should come over and have sex with Ms. Mateo. Id. at 477. Ms. Mateo begged petitioner to take her back to her residence so she could say goodbye to her son. Id. 479. Petitioner conceded, and drove Ms. Mateo back to her apartment. Id. As they were driving towards the apartment, petitioner continued to beat her and tell her he was going to kill her son. Id. at 479-80. When they arrived at Ms. Mateo's apartment, her clothes were covered in blood. Id. at 480. Ms. Mateo's son, her niece, and Ms. Mateo's friend, Carl Ingraham, were in the apartment. Id. at 481. When the children asked what had happened, Ms. Mateo told them that she fell down, as petitioner had instructed. Id. at 480, 481. Ms. Mateo whispered to Mr. Ingraham and asked him to help her. Id. at 482. Mr. Ingraham left the apartment and called 911. Id. at 633.

After Mr. Ingraham left, petitioner and Ms. Mateo entered the bedroom. Trial Tr. at 486. Petitioner threw Mateo on the bed and threatened to rape her. Id. Ms. Mateo's son came into the bedroom. Id. When he refused to leave Ms. Mateo yelled at him to leave the bedroom. Id. at 488. Shortly thereafter, Mr. Ingraham called 911, and the police and paramedics arrived at the apartment. Id. at 491. Ms. Mateo initially told the police and paramedics that she sustained her injuries from a fall. Id. However, she testified that she did so because petitioner was present. Id.

Ms. Mateo left the apartment in an ambulance. Trial Tr. at 492. She informed the

ambulance driver that petitioner had tried to kill her.  Id.  Ms. Mateo was transported to the hospital where she received stitches in her head.  Id. at 494.  Based on Ms. Mateo's statements, petitioner was placed under arrest.  Id. at 359.  While petitioner was being booked at the police station he acknowledged that he was Clarence Miller.  Id. at 362,373-78.  During the booking process the police recovered two nine millimeter bullets from petitioner's pants pocket, and seized his bloodstained shirt.  Id.[9]  While at the police station, petitioner stated that he and Ms. Mateo had gotten into an argument that had "gotten out of hand."  Id. at 410.

The next day, the police executed a search warrant at petitioner's residence.  Trial Tr. at 395,414-26.  The police focused their search on petitioner's bedroom.  Id. at 417-19. During the search, a safe was removed from the bedroom petitioner shared with Mr. Miller. Id. at 422.  The officers opened the safe at the police station, and recovered an operable black handgun with a distinctive rubber band around the grip.  Id. at 423-24.

The jury found petitioner guilty of Kidnaping in the Second Degree, Criminal Use of a Firearm in the First Degree, Criminal Possession of a Weapon in the Second Degree, Assault in the Second Degree, Assault in the Third Degree, and Reckless Endangerment in the Second Degree.   Trial Tr. at 752-55.  Petitioner appeared for sentencing on November 30, 2004.  Tr. at 1.  Petitioner's counsel made an oral motion, pursuant to New York Criminal Procedure Law § 330.30(1), to set aside the verdict on the grounds that Ms. Mateo's testimony was insufficient as it failed to establish each and every element of each and every crime charged in the indictment.  Id. at 4-5.  The Court orally denied petitioner's motion.  Id.

---

[9] The jury viewed a portion of the booking video.  Trial Tr. at 623,635-636.  Respondent filed a copy of the booking video with the Clerk of the Court.

at 5.  The Court adjudicated petitioner a second felony offender, and imposed the following determinant prison sentences: twenty-five years for Kidnaping in the Second Degree, twenty-five years for Criminal Use of a Firearm in the First Degree, fifteen years for Criminal Possession of a Weapon in the Second Degree, seven years for Assault in the Second Degree, one year for Assault in the Third Degree and one year for Reckless Endangerment in the Second Degree.  Id. at 15-16. The Court ordered that the sentences for Kidnapping, Criminal Possession of a Weapon, Assault in the Second Degree, Assault in the Third Degree and Reckless Endangerment run consecutively to the twenty-five year sentence imposed for Criminal Use of a Firearm.  Id. at 16.  As a result petitioner, received a forty year determinate sentence.  Id.

Petitioner's appellate counsel filed a brief in the Appellate Division, Fourth Department.  Dkt. No. 12-1 at 1-33.[10]  In the brief, counsel argued that: (1) trial counsel was ineffective in failing to object to the prosecutor's inflammatory and prejudicial remarks in her opening statement and summation; (2) Ms. Mateo's utterance to the paramedic was improperly received in evidence, as it was hearsay and bolstered Mateo's testimony; and (3) petitioner's convictions were against the weight of the evidence and unsupported by a legally sufficient evidence. See id. at 1-34.  Appellate counsel further argued that the forty year determinate sentence imposed by the Trial Court was illegal.  See id. at 25-33.

The Appellate Division modified the judgment of conviction by ordering that petitioner's sentences run concurrently and unanimously affirmed the conviction as modified.  Dkt. No. 12-1 at 191-94; see generally People v.  Miller,115 A.D.3d 1302 (N.Y. App. Div.

---

[10]  The page numbers following Dkt. No. 12 refer to the pagination of the header numbers generated by CM/ECF, not the pagination provided in the transcripts.

2014).  The Appellate Division rejected petitioner's claim that he was denied a fair trial based upon prosecutorial misconduct during the prosecutor's opening and closing statements.  Id. at 191.  The Court noted that petitioner did not raise any objection at trial to the allegedly improper comments, and, therefore, failed to preserve the issue for review.  Id.  The Court rejected petitioner's argument that his trial counsel was ineffective as he "failed to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings, and the record establishes that defense counsel provided meaningful representation to defendant." Id. at 191-192.(internal quotations and citations omitted).

The Appellate Division held that the question of the admissibility of an excited utterance is first entrusted to the trial court.  Dkt. No. 12-1 at 192.  The Court found that the utterance was properly admitted as "at the time the utterance[s were] made (the victim) was in fact under the stress of excitement caused by an external event significant to still . . . her reflective faculties' . . . ." Id. (quoting People v. Bryant, 27 A.D.3d 1124,1126 (N.Y. App. Div. 2006)).  With respect to petitioner's claim that Ms. Mateo's excited utterance to the paramedic was improperly received in evidence, the Appellate Court found that as petitioner failed to raise a specific objection at trial, it was unpreserved for appellate review.  Id.

The Appellate Division rejected petitioner's argument that the evidence at trial was legally insufficient to support his convictions.  Dkt. No. 12-1 at 192.  The Court stated that "[N]othing in the record suggests that the victim was so unworthy of belief as to be incredible as a matter of law or otherwise tends to establish defendant's innocence of those crimes . . ., And thus it cannot be said that the jury failed to give the evidence the weight should be accorded."  Id. at 193 (internal quotations and citations omitted).

Petitioner's counsel sought leave to appeal to the New York State Court of Appeals.

8

Dkt. No. 12-1 at 195-97. On July 21,2014, the Court of Appeals denied petitioner's application. Dkt. No. 12-1 at 199. Petitioner subsequently filed a pro se motion for a writ of error coram nobis with the Appellate Division, Fourth Department. Dkt. No. 12-1 at 200-27. In his motion, petitioner argued that his appellate counsel was ineffective because she failed to assert that: (1) his trial counsel was ineffective in failing to request that petitioner be present during a critical stage of the trial; (2) his trial counsel erred when he stipulated that the prosecution witness was qualified to give expert testimony; and (3) the weapons count was against the weight of the evidence in the absence of any proof that the prosecution's weapons expert did not test fire the two bullets recovered with the weapon. See id. On December 23, 2015, the Appellate Division denied petitioner's motion. Id. at 233. Petitioner sought leave to appeal to the New York State Court of Appeals. Id. at 234-66. On March 31, 2016, the Court of Appeals denied petitioner's motion. Id. at 266.

### B. Summary of Petition

Liberally construed, the petition raises the following claims for relief: (1) trial counsel was ineffective for failing to object to prosecutor's comments during her opening statement and summation ; (2) the trial court erred in admitting Ms. Mateo's statement to the paramedic as an excited utterance; (3) the trial court erred in determining the admissibility of a booking video in petitioner's absence; and (4) the evidence was legally insufficient to support the verdict as Ms. Mateo's testimony was incredible as a matter of law. See generally Pet.

## II. Discussion

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001); Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008).[11] This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

Under section 2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'" Cullen, 563 U.S. at 181 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. See Williams, 529 U.S. at 413; Ramdass v. Angelone, 530 U.S. 156, 166 (2000).

---

[11] Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. Thompson v. Keohane, 516 U.S. 99, 107-113 (1995). When presented with these questions, the court was empowered to conduct an independent review of the record. Id.

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed de novo. Washington v. Shriver, 255 F.3d 45, 55 (2d Cir. 2001).

## B. Exhaustion

### 1. Legal Standard

Prior to seeking federal habeas corpus relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights.[12] Aparicio v. Artuz, 269 F.3d 78,89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254 (b) (1)); Ellman v. Davis, 42 F.3d 144,147 (2d Cir. 1994). This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." Daye v. Att'y Gen. of New York, 696 F.2d 186,191 (2d Cir. 1982). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. Id. "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas courts were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." Glover v. Bennet, No. 98-CV-0607 (RSP/DS), 1998 WL

---

[12] 28 U.S.C. § 2254 (b)and (c) provide, in part, as follows: (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process in effective to protect the rights of the applicant . . . . (c) An applicant shall not be deemed to have exhausted the remedies in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise by any available procedure, the question presented.

278272, at *1 (N.D.N.Y. May 21,1998) (quoting Daye, 696 F.2d at 192).[13]

This exhaustion requirement is satisfied if the federal claim has been "fairly presented" to the state courts. See Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." Daye, 696 F.2d at 191; Morales v. Miller, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999). "Although the petitioner need not have cited 'book and verse on the federal [C]onstitution,' he must have articulated 'the substantial equivalent' of the federal habeas claim." Colon v. Artuz, 174 F. Supp. 2d 108, 114 (S.D.N.Y. 2001) (quoting Picard, 404 U.S. at 278); see also Daye, F. 2d at 192; Morales, 41 F. Supp. 2d at 374. Moreover, in order for a petitioner to properly exhaust his or her claim, he or she "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"; this includes presenting "both the factual and legal premise of the federal claims ultimately asserted in the [federal] habeas petition" to the New York Court of Appeals. Galdemez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation and quotation marks omitted).

### C. Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective for failing to object to the prosecutor's opening and closing statements. See Pet. at 5. To prevail on this claim, a petitioner must satisfy a two-prong test showing that his counsel's performance was (1) deficient, and (2) that such deficient performance caused the petitioner actual prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient performance" requires the

---

[13] Since ADEPA's restriction on federal habeas power is premised upon the duty of the state courts to uphold the Constitution and faithfully apply federal laws, the ADEPA's review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. Washington, 225 F.3d at 62.

petitioner to show that counsel's performance "fell below an objective standard of reasonableness." Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 688).  In determining the reasonableness of counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  "Prejudice" requires the petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Here, petitioner's claim of ineffective assistance of counsel was never presented to the state courts and is therefore unexhausted.  Petitioner's appellate counsel filed a brief with the Appellate Division, Fourth Department.  Dkt. No. 12-1 at 1-28.  Petitioner's appellate counsel argued that the trial counsel was ineffective in failing to object to repeated instances of prosecutorial's conduct in both her opening statement and summation.  See id. at 15-16. Appellate counsel suggested that because the trial counsel failed to object to the prosecutor's "improper and prejudicial comments," petitioner was deprived of his right to effective assistance of counsel and his right to a fair trial under both the state and federal standards.  Id. at 15, 16.  The Appellate Division rejected that contention, finding that petitioner failed "'to demonstrate the absence of strategic or other legitimate explanations' for counsel's alleged shortcomings." Id. at 191-192 (quoting People v. Benevento, 91 N.Y. 2d 708, 712 (1998)).

Petitioner sought leave to appeal to the New York State Court of Appeals.  Dkt. No. 12-1 at 156-57.  In the May 2, 2014 letter, petitioner argued that the Appellate Division erroneously applied the "meaningful representation" standard under New York State law. Id. at 197.  As respondent argues, petitioner did not contend that he had been denied effective assistance of counsel under the federal standard, which employs a stricter standard

than its state law counterpart.  See id.; Resp. Mem. of Law at 14; see also Rosario v. Ercole, 601 F.3d 118, 124 (2d Cir. 2010) ("The New York Court of Appeals clearly views the New York constitutional standard as more generous toward defendants than Strickland.") (citing People v. Turner, 5 N.Y.3d 476, 480 (2005) ("Our ineffective assistance cases have departed from the second ('but for') prong of Strickland, adopting a rule somewhat more favorable to defendants.")).  Consequently, because petitioner's ineffective assistance of counsel claim was not raised under federal law on direct appeal, and because petitioner cannot now raise that claim in state court, such claim is deemed exhausted and is procedurally barred.  See Spence v. Supt., Great Meadows Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000) ("We agree that [petitioner's] claim was not exhausted on direct appeal in the state courts, and recognize that such would ordinarily preclude habeas corpus review.  But when a claim is procedurally defaulted in state court by failure to abide by state procedural rules and no state remedies remain available to a defendant, his claim is deemed exhausted for purposes of a habeas application.  New York permits only one application for direct review . . . and having failed to raise the claim on direct appeal [petitioner] may not seek collateral relief in New York courts.") (citations omitted).

Petitioner cannot overcome his procedural default.  A federal court may review a procedurally defaulted claim if "the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 749-50 (1991) (internal quotation marks and citations omitted).   To establish legal cause for procedural default, a petitioner must show that some objective external factor impeded his ability to comply with the state's procedural rules.  Murray v. Carrier, 477 U.S. 478, 488 (1986); Restrepo v. Kelly, 178 F.3d 634, 638 ( 2d Cir. 1999).  Ineffective assistance of counsel may constitute cause for procedural default;  however, a claim of ineffective

14

assistance of counsel must first "be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." Murray, 477 U.S. at 488-89. The undersigned finds that petitioner has not shown "cause" for his procedural default in failing to include the federal ineffective assistance of counsel claim in his leave application. As petitioner has not established cause for his procedural default of these claims, the Court need not address prejudice. See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not Stepney showed prejudice."). Moreover, petitioner has not offered any basis to find that the failure to address his ineffective assistance of counsel claim will result in a fundamental miscarriage of justice. As such, the undersigned recommends that the Petition be denied with respect to petitioner's unexhausted ineffective assistance of counsel claim.

### D. Excited Utterance

Petitioner contends that the testimony of a paramedic was improperly received in evidence as it bolstered Ms. Mateo's testimony. Pet. at 8. During the trial, the prosecution's witness, paramedic Jesse Rogers, testified as to a conversation he had with Ms. Mateo in which she described for him what had occurred. See Trial Tr. at 327-31. In his direct appeal to the Appellate Division, petitioner argued that Ms. Mateo's utterance to the paramedic was improperly received in evidence as it bolstered her testimony. Dkt. No. 12-1 at 17-19. The Appellate Division rejected petitioner's claim finding that, by failing to timely object to that testimony during trial as improper bolstering, petitioner failed to preserve that issue for appellate review. Id. at 192; see Miller, 115 A.D.3d at 1304. The Court further held that "because the statements were properly determined to be excited utterances, they did not

15

constitute improper bolstering." Id. (citing People v. Stevens, 57 A.D.3d 1515, 1516 (N.Y. App. Div. 2008); People v. Sims, 244 A.D.2d 920, 920 (N.Y. App. Div. 1997)).  As such, petitioner's claim is barred from this Court's review.

New York Criminal Procedure Law § 470.05(1) provides, inter alia, that "[f]or purposes of appeal, a question of law with respect to a ruling . . . of a criminal court during a trial, is presented when a protest there too was registered, by the party claiming error, at the time of such ruling . . . ."  N.Y. CRIM. PRO. Law § 470.05(1).  This rule has been interpreted by the New York courts to require, "at the very least, that any matter which a party wishes to preserve for appellate review be brought to the attention of the trial court at a time and in a way that gave the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78 (1995).  New York's contemporaneous objection rule is an independent and adequate state law ground which will preclude federal habeas corpus review.  See e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have also held . . . that the contemporaneous objection rule constitutes an independent and adequate state law ground for disposing of a claim that the defendant's Sixth Amendment right to a public trial has been violated.") (internal citation omitted).

Here, the Appellate Division correctly found that although petitioner objected to the paramedic's testimony on the grounds that it violated his confrontation rights and was not an excited utterance, he did not object on the ground that it bolstered Mateo's testimony. See Trial. Tr. at 151-56.  As the state court holding sets forth the specific and sufficient basis in state law for that judgment, it should be upheld by the federal court unless petitioner can satisfy the cause/prejudice test.  See Coleman, 501 U.S. at 749-50 (establishing that a petitioner may overcome procedural default if he can establish "cause for the default and prejudice attributable thereto.") (internal quotation marks and citations omitted).

In order to establish legal cause for his procedural default, petitioner must show that

some objective external factor impeded his ability to comply with New York state's procedural rules. Restrepo, 178 F.3d at 638. Here, petitioner has not established good cause for his procedural default of this claim. As such, the Court need not address the issue of prejudice. See Stepney, 760 F2d at 45. Moreover, petitioner has offered no basis to find that the failure to consider this claim will result in a fundamental miscarriage of justice. Accordingly, the undersigned recommends that the Petition be denied with respect to petitioner's unexhausted claim regarding Ms. Mateo's excited utterance.

### E. The Booking Video

Petitioner contends that he was deprived of a fair trial as he was not present at a critical stage of the proceedings when the Court ruled on the admissibility of the booking video. Pet. at 7.    On direct appeal, petitioner's appellate counsel argued that: (1) trial counsel was ineffective in failing to object to the prosecutors improper remarks in her opening statement and summation; (2) Mateo's utterance to the paramedic was improperly received in evidence as it was hearsay and bolstered Mateo's testimony; (3) his convictions were against the weight of the evidence and unsupported by legally sufficient evidence; and (4) the sentence imposed by the court was illegal and improper. See Dkt. No. 21-1 at 1-33. Petitioner did not raise any claim relating to the admissibility of the booking video or his absence from the courtroom when the issue of the transcript was discussed by the Court and counsel. Id. As petitioner never raised this claim which pertains to a matter of record in state court and can no longer do so it is unexhausted and procedurally barred. See Wilson v. Heath, 938 F. Supp. 2d 278, 294-95 (N.D.N.Y. 2013) ("Petitioner's claims set forth under grounds (c) through (f) above have never been raised in any state proceeding. Instead, it appears they are being asserted for the first time in this petition. Accordingly, these claims are unexhausted . . . [and also are] procedurally defaulted because petitioner cannot now

17

pursue them by way of any state court procedure.") (citing <u>Spence</u>, 219 F.3d at 170) ("Because [the petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.")).

To the extent that petitioner suggests that his motion for writ of error *coram nobis,* Dkt. No. 12-1 at 200-27*,* exhausted his claim, such contention is false. In his motion, petitioner asserted an ineffective assistance of counsel claim against his appellate counsel for her failure to raise, on direct appeal, that petitioner's trial counsel was ineffective when he failed "to request that his client be at a critical stage of the trial." <u>Id.</u> at 206. Petitioner specifically contended that he was not present when the Court and counsel had an on the record conversation on November 10, 2004 regarding the transcript based on the booking video. <u>Id.</u> at 212. On December 23, 2015, the Appellate Division denied petitioner's motion. <u>Id.</u> at 233. Petitioner sought leave to appeal to the New York State Court of Appeals. <u>Id.</u> at 234-66. On March 31, 2016, that application was denied. <u>Id.</u> at 266.

Petitioner's filing of the *coram nobis* petition did not exhaust his challenge to the underlying state trial court error. <u>See</u> <u>Turner v. Artuz</u> ,262 F.3d 118, 123 (2d Cir. 2001) (concluding that the petitioner's underlying claim was not exhausted through his *coram nobis* petition alleging ineffective assistance of counsel for failing to raise said claim). Raising the issue in a writ of error *coram nobis* "does not exhaust the underlying claims advanced to support the claim of ineffective assistance of appellate counsel." <u>Zimmerman v. Burge</u>, 492 F. Supp. 2d 170, 189 (E.D.N.Y. 2007) (concluding that the "petitioner's claim was not fairly presented to the state courts [in his coram nobis petition] and, accordingly, it is unexhausted.") (citation omitted). Consequently, the filing of a petition for *coram nobis* does not resolve petitioner's procedural default. <u>See</u> <u>Rush v. Lempke</u>, 500 F. App'x 12, 15 ( 2d Cir. 2012) (summary order) ("Filing a *coram nobis* petition would not 'fairly present[ ] [the petitioner's] federal claim to the state courts.' Consequently, a *coram nobis* proceeding

would not resolve Rush's procedural default.") (quoting <u>Daye</u>, 696 F.2d at 191).

Petitioner's contention that his Sixth Amendment rights were violated because he was not present during the November 10, 2004 discussion regarding the video is without merit. On November 10, 2004 petitioner arrived late to court.  <u>See</u> Trial Tr. at 516.  Judge Walsh, the prosecutor and defense counsel were present prior to petitioner's arrival.  <u>Id.</u> at 513.  In petitioner's absence the Court and counsel had a conversation regarding the booking video. <u>Id.</u> at 515-516.  Defense counsel indicated that he listened to the video on two separate VCRs but could not hear all of the audio. <u>Id.</u>  The Court indicated that during the next recess "we can play it and you can listen to it." <u>Id.</u>  The Court further indicated that "the transcript is simply a guide." <u>Id.</u> at 516.  Judge Walsh advised the parties that he would instruct the jury that the transcript is "what we believe they said, but that's not dispositive of what they said, of what was said on the tape." <u>Id.</u>  Shortly  after that colloquy took place on the record Petitioner was brought into the court room. <u>Id.</u>

The question is whether, in light of the entire record, petitioner's presence during the subject proceeding would have contributed to his ability to defend himself against the charges. <u>U.S. v. Gagnon</u>, 470 U.S. 522, 526-27 (2015) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him. [Supreme Court precedent establishes that] a defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge . . . .") (citing <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 105-06, 108 (1934) (internal citations omitted)).  As such, "[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." <u>Id.</u>

19

Here, petitioner's absence from the November 10, 2004 discussion regarding the video did not materially affect the fairness of that proceeding.  See, e.g., Contreras v. Artus, 778 F. 3d 97, 113 (2d Cir. 2015) (holding that the petitioner's absence from the proceeding in question did not "materially undermine the fairness of the procedure in violation of his due process right to be present.") (internal citation and quotations marks omitted).  The trial court had already determined, in petitioner's presence, that the video would be played for the jury and that a transcript would be provided to the jury.  Trial Tr. at 10.  On November 8, 2004, prior to jury selection, Judge Walsh stated, on the record, and in front of petitioner that he granted the prosecution's application to allow the booking videotape to be played to the jury. Id.  Judge Walsh indicated that this had been "stipulated to by the parties," and that transcripts had been provided to both parties.  Id. at 10-11.  He also advised that "[t]he transcript would simply be a guide to the jury.  It would not be submitted into evidence.  What words come from the tape will be up to the jury."  Id.  Given the Court's prior ruling, the colloquy on November 10, 2004, which occurred in petitioner's absence, was ministerial in nature.  Moreover, plaintiff has failed to demonstrate cause for the default.  Insofar as petitioner seems to suggest, as he did in his *coram nobis* petition, that the alleged ineffectiveness of his appellate counsel caused the failure to raise booking video issues in his direct appeal, the undersigned concludes, as noted above, that raising the issue in a writ of error *coram nobis* "does not exhaust the underlying claims advanced to support the claim of ineffective assistance of appellate counsel."  Zimmerman, 492 F. Supp. 2d at 189.  Accordingly, the undersigned recommends that petitioner's Sixth Amendment claim be denied.

### F. Sufficiency of the Evidence

In his traverse, petitioner argues that "the verdict is legally insufficient in that his guilt

has not been approved beyond a reasonable doubt." Dkt. No. 19 at 37.  Although petitioner contends that his conviction is unsupported by legally sufficient evidence, he does not point to any specific defects in the evidence that was presented to the jury.  See Pet. at 10; Dkt. No. 19 at 37-38. Petitioner contends that "the reliability of the evidence (and, thus, the jury verdict) is called into question by the revelation above argued Points I-III, the victim's credibility, and the firearms expert examination." Dkt. No. 19 at 38.  Respondent argues that petitioner's challenge to the sufficiency of the evidence is meritless.  Resp. Mem. of Law at 29.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be based on "proof beyond a reasonable doubt of every fact necessary to constitute the crime [with] which [the defendant] is charged." Einaugler v. Supreme Court of the State of New York, 109 F. 3d 836, 839 (2d Cir. 1997) (quoting In re Winship, 397 U.S. 358, 364 (1970) (internal quotation marks omitted)).  A petitioner challenging a state court conviction based on the sufficiency of the evidence bears a heavy burden.  Ponnapula v. Spitzer,  297 F. 3d 172, 179 (2d Cir. 2002) (citing Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)).  In order to succeed on such a claim the petitioner must show that no rational finder of fact could have found the essential elements of each crime beyond a reasonable doubt.  Fama v. Comm'r of Corr. Servs., 235 F. 3d 804, 811 (2d Cir. 2000).

The Court has addressed the arguments raised at Points I -III of the petition earlier in this decision.  See discussion II.C-D supra.  The Court would note that the Appellate Division specifically addressed petitioner's arguments attacking Ms. Mateo's credibility, finding that "nothing in the record suggests that the victim was so unworthy of belief as to be incredible as a matter of law or otherwise tends to establish defendant's innocence of those crimes . . ., and thus it cannot be said that the jury failed to give the evidence the weight it should be accorded." Dkt. No. 12-1 at 193; Miller, 118 A.D.3d at 1305 (quoting People v.

Woods, 26 A.D.3d 818, 819 (N.Y. App. Div. 2006) (internal quotation marks omitted).

It is well-established that credibility determinations are the exclusive province of the jury and are beyond the scope of habeas corpus review. See Lopez v. Supt. of Five Points Corr. Facility, No. 14-CV-4615 (RJS)(JLC), 2015WL 1300030, at *9 (S.D.N.Y. Mar. 23, 2015). The court reviewing a habeas petition must defer to the jury's evaluation of the weight of the evidence and the credibility of witnesses. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (concluding that, in reviewing a habeas corpus petition, "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues.") (citations omitted). Thus, because petitioner's legal insufficiency claim essentially challenges Ms. Mateo's credibility, petitioner's argument fails to state a basis for habeas relief. See Alexis v. Griffin, No. 11-CV-5010-DLC-FM, 2014 WL 3545583, at *20 (S.D.N.Y. July 18, 2014) (dismissing the petitioner's "sufficiency of the evidence claim" as it forced the Court to assess witness credibility).

Petitioner's contention that the evidence against him was insufficient is without merit as the evidence in the record supports plaintiff's conviction. As to petitioner's conviction for Kidnaping in the Second Degree, at trial, Ms. Mateo testified that petitioner brandished a weapon, and told her that if she did not follow his instructions he would kill her. Trial Tr. at 457. At petitioner's direction she drove all over Syracuse while he continued to strike her and threatened to kill her. See id. at 458-68. Ms. Mateo's testimony is sufficient to establish that petitioner abducted Mateo in violation of Penal Law § 135.20 and is guilty of Kidnaping in the Second Degree. As to petitioner's conviction for convicted of Criminal Use of a Firearm Ms. Mateo testified that while she and petitioner at Kirk Park, petitioner exited the vehicle and fired a pistol away from the vehicle. Id. at 473. Petitioner then looked in the vehicle and fired at Ms. Mateo, narrowly missing her. Id. Petitioner later returned home where he stored

what Ms. Mateo described as a gun with rubber band around it. Id. at 458, 474. The police later located that distinctive gun in a safe petitioner's bedroom. Id. at 423-24. Such evidence is sufficient to establish that petitioner is guilty of the offense Criminal Use of a Firearm in the First Degree. Moreover, it is sufficient to sustain petitioner's conviction for Criminal Possession of a Weapon in the Second Degree, as he possessed a loaded firearm.

As to petitioner's conviction for Assault in the Second Degree and Third Degree, the trial testimony by Ms. Mateo that petitioner used a gun to repeatedly strike her causing her substantial pain and the need for medical attention including stitches is sufficient to support each of those convictions. Id. at 492-94. As to petitioner's conviction for Reckless Endangerment in the Second Degree, Ms. Mateo testified that petitioner shot a pistol at which narrowly missed striking her. Id. at 473. She further testified that petitioner repeatedly struck her with a pistol. See id. at 457-58, 462-63, 467. Such evidence is sufficient to establish that petitioner recklessly engaged in conduct which pose a substantial risk of physical injury to Ms. Mateo. The jury, in weighing the evidence, was entitled to Ms. Mateo's testimony more credible than that of defense's witnesses. See Alexis, 2014 WL 3545583, at *21 ("A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact."). Accordingly, the undersigned recommends that petitioner's sufficiency of the evidence claim be denied.

### III. Conclusion

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Clarence Miller's petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no certificate of appealability should be issued with respect

to any of petitioner's claims as petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[14]

DATED:     April 2, 2018
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[14] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).